Barbara Enloe Hadsell, Esq. [S.B. #086021]
Dan Stormer, Esq. [S.B. #101967]
Cindy Pánuco, Esq. [S.B. #266921]
HADSELL STORMER & RENICK LLP
128 N. Fair Oaks Avenue
Pasadena, California 91103
Telephone: (626) 585-9600
Facsimile: (626) 577-7079

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASMIN SALCIDO, and GARY SALCIDO, individually and as surviving heirs and successors in interest of JONATHAN SALCIDO (deceased),<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF WHITTIER, CHIEF OF POLICE JEFF A. PIPER (in his individual and official capacity), LAMARR TINNIN (in his individual and official capacity), JIM AZPILICUETA (in his individual and official capacity), ROY BENJAMIN (in his individual and official capacity); JAKE JUNGE (in his individual and official capacity), JOHN KING (in his individual and official capacity), RICHARD JENSEN (in his individual and official capacity), JOSE ESCOBEDO (in his individual and official capacity) and DOES 8-20, inclusive,<br><br>Defendants. | Case No: 2:17-cv-8819-CBM (ASx)<br><br>[Assigned to the Honorable Consuelo B. Marshall – Courtroom 8B]<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES**<br>1.   42 U.S.C. § 1983 – Excessive Force<br><br>2.   42 U.S.C. § 1983 – Deprivation of the Rights of Plaintiffs to Familial Relationship with Decedent<br><br>3.   42 U.S.C. § 1983 – *Monell* Liability<br><br>4.   Violation of Title II of the Americans with Disabilities Act (42 U.S.C. § 12131)<br><br>5.   Violation of Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794)<br><br>**DEMAND FOR JURY TRIAL** |

# INTRODUCTION

1.     On the morning of May 4, 2017, Jasmin Salcido ("Mrs. Salcido") began preparations to admit her 27-year old son Jonathan Salcido ("Jonathan") into the hospital for treatment of an episode of acute psychosis. Jonathan, who suffered from mental health disabilities, willingly packed his bags for his temporary hospitalization. Just before Mrs. Salcido was to drive him to the hospital, Jonathan suddenly became paranoid and walked out of his home in his stocking feet.  Mrs. Salcido immediately called "911".  She explained to the dispatcher that Jonathan was mentally disabled, was suffering from a mental health episode and requested medical assistance for Jonathan who was walking away at a pace too fast for Mrs. Salcido to catch. Mrs. Salcido asked for help transporting her son to a hospital for treatment. Officers from the City of Whittier Police Department ("Whittier") responded to the call.  Multiple officers caught up with Jonathan, restrained him, handcuffed him, piled on top of him, and crushed the defenseless, unarmed young man to death. The horrific killing took place in the presence of Mrs. Salcido, who witnessed her son's desperate struggles to breathe and who frantically tried to tell the police that Jonathan was unarmed, mentally ill and needed their help. Jonathan's father, Gary Salcido ("Mr. Salcido"), arrived on the scene, only to watch officers futilely attempt to revive Jonathan.

2.     Defendant Whittier's officers were aware that Jonathan was suffering from a long-standing mental illness. This senseless killing was carried out by multiple officers who either lay on top of Jonathan while pinning him face-down to the concrete sidewalk, or who applied excessive pressure to his body in the form of lethal "control holds". Jonathan, handcuffed and terrified, struggled to breathe as these officers cut off air to his lungs. As the minutes ticked by, more Whittier police piled on top of Jonathan, eventually asphyxiating him and causing his death.

3.     Plaintiffs bring this action for damages against Defendants for general, compensatory, and statutory damages, costs and attorneys' fees, declaratory relief and training resulting from Defendants' unlawful and egregious conduct, as alleged herein. Additionally, Plaintiffs seek punitive damages against the individual Defendants.

1

## JURISDICTION

4.     This Complaint seeks damages for violations of the civil rights, privileges, and immunities guaranteed by the First, Fourth, and Fourteenth Amendments of the United States Constitution, pursuant to 42 U.S.C. §§ 1983 and 1988, and for violations of Title II of the Americans With Disabilities Act, 42 U.S.C. § 12131, and the Rehabilitation Act, 29 U.S.C. § 794.

5.     This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. §§ 1331 and 1343.

## VENUE

6.     Plaintiffs' claims arose in the County of Los Angeles, California. Venue therefore lies in the Central District of California pursuant to 28 U.S.C. § 1391(b)(2).

## PARTIES

7.     Plaintiff Jasmin Salcido is the mother of Jonathan Salcido, and a resident of Los Angeles County.

8.     Plaintiff Gary Salcido is the father of Jonathan Salcido, and a resident of Los Angeles County. Jasmin Salcido and Gary Salcido are surviving heirs and successors in interest of Jonathan Salcido. Attached hereto as Exhibit 1 is an affidavit executed by Jasmin Salcido and Gary Salcido pursuant to C.C.P. §377.32.

9.     Defendant City of Whittier ("Whittier") was and is a legal political entity established under the laws of the State of California, with all the powers specified and necessarily implied by the Constitution and laws of the State of California and exercised by a duly elected City Council and/or their agents and officers. Whittier is responsible for the actions, inactions, policies, procedures, practices, and customs of the Whittier Police Department ("WPD") and its agents and employees. At all relevant times, Whittier was and continues to be responsible for assuring that the actions of the WPD and its agents and employees comply with the Constitutions of the State of California and of the United States and any other applicable laws and regulations.

10.     Defendant Jeff A. Piper ("Piper") is, and was at all relevant times, the duly

2

appointed Chief of Police for the WPD, and an employee of Whittier. Defendant Piper holds the highest position in the WPD and is and was responsible for the hiring, screening, training, retention, supervision, discipline, counseling, and control of all WPD employees and agents. He also is and was responsible for the promulgation of the policies, procedures, practices, and customs pursuant to which the acts and failures to act alleged herein were committed. Defendant Piper is sued individually as well as in his official capacity for the purpose of ensuring that Plaintiffs may obtain complete and effective injunctive relief against the WPD, whose actions and conduct are under the control and authority of the current Police Chief.

11.    Lamarr Tinnin is an Officer with the Whittier Police Department whose acts and failures to act caused or contributed to injury to and the death of Jonathan Salcido without justification.  Tinnin is hereby substituted into this action as Doe Defendant 1.

12.    Jim Azpilicueta is an Officer with the Whittier Police Department whose acts and failures to act caused or contributed to injury to and the death of Jonathan Salcido without justification.  Azpilicueta is hereby substituted into this action as Doe Defendant 2.

13.    Roy Benjamin is an Officer with the Whittier Police Department whose acts and failures to act caused or contributed to injury to and the death of Jonathan Salcido without justification.  Benjamin is hereby substituted into this action as Doe Defendant 3.

14.    Jake Junge is a Detective with the Whittier Police Department whose acts and failures to act caused or contributed to injury to and the death of Jonathan Salcido without justification.  Junge is hereby substituted into this action as Doe Defendant 4.

15.    John King is an Officer with the Whittier Police Department whose acts and failures to act caused or contributed to injury to and the death of Jonathan Salcido without justification.  King is hereby substituted into this action as Doe Defendant 5.

16.    Richard Jensen is an Officer with the Whittier Police Department whose acts and failures to act caused or contributed to injury to and the death of Jonathan Salcido without justification.  Jensen is hereby substituted into this action as Doe Defendant 6.

17.    Jose Escobedo is a Sergeant with the Whittier Police Department whose acts and failures to act caused or contributed to injury to and the death of Jonathan Salcido without

**FIRST AMENDED COMPLAINT FOR DAMAGES**

1   justification.  Escobedo is hereby substituted into this action as Doe Defendant 7.

2       18.     The true names of Doe Defendants 8 through 20, inclusive, are presently

3   unknown to Plaintiffs, who therefore sue each of these Defendants by such fictitious names.

4   Upon ascertaining the true identity of Doe Defendants, Plaintiffs will amend this complaint, or

5   seek leave to do so, by inserting the true name in lieu of the fictitious name. Plaintiffs are

6   informed and believe, and on the basis of such information and belief allege, that Defendants

7   Piper, Tinnin, Azpilicueta, Benjamin, Junge, King, Jensen, Escobedo and each Doe Defendant

8   is in some manner legally responsible for the acts, omissions, injuries and damages herein

9   alleged.

10      19.     Defendants Piper, Tinnin, Azpilicueta, Benjamin, Junge, King, Jensen,

11  Escobedo, and Does 8 through 20 engaged in the acts and omissions alleged herein under

12  color of state law.

13      20.     Plaintiffs are informed and believe and thereon allege that at all times relevant

14  herein, Defendants and each of them were the agents, employees, servants, joint venturers,

15  partners, and/or co-conspirators of the other Defendants named in this Complaint and that at

16  all times, each of the Defendants was acting within the course and scope of said relationship

17  with Defendants.

18      21.     Plaintiffs are informed and believe, and thereupon allege, that at all times

19  material herein, each of the Defendants was the agent or employee of, and/or working in

20  concert with, his/her co-Defendants and was acting within the course and scope of such

21  agency, employment, and/or concerted activity. Plaintiffs allege that to the extent certain acts

22  and omissions were perpetrated by certain Defendants, the remaining Defendant or

23  Defendants confirmed and ratified said acts and omissions.

24      22.     Whenever and wherever reference is made in this Complaint to any act or

25  failure to act by a Defendant or Defendants, such allegations and references shall also be

26  deemed to mean the acts and failures to act of each Defendant acting individually, jointly, and

27  severally.

28      23.     Plaintiffs and each of them exhausted their administrative remedies by filing

4

**FIRST AMENDED COMPLAINT FOR DAMAGES**

governmental tort claims with the City of Whittier on August 30, 2017, pursuant to California Government Code section 910, et seq. Those claims were rejected by Defendant Whittier on September 28, 2017.

## FACTUAL ALLEGATIONS

**A.  Jonathan's Early Life, Education, Mental Illness Diagnosis and Treatment**

24.     Decedent Jonathan Salcido was born on December 11, 1989 to his parents Gary and Jasmin Salcido, Plaintiffs in this action.  At the time of his death, Jonathan was twenty-seven years old.

25.     Jonathan lived his entire life in the family home in Whittier with his parents, and two sisters, Janine and Jennifer. Jonathan attended California High School, and graduated in 2008.

26.     Around his eighteenth birthday, in 2007, Jonathan began exhibiting unusual behavior. One night, after not sleeping for several days, he exhibited paranoia and spoke in incoherent sentences sometimes known as "word salads." His parents immediately sought medical attention, as a result of which treating mental health doctors diagnosed Jonathan as suffering from mental illness, which thereafter was variously characterized as bipolar disorder, paranoid schizophrenia, or schizoaffective disorder.

27.     Doctors placed Jonathan on medication and he started seeing a physician regularly to manage his condition. This treatment was effective at helping to keep Jonathan's symptoms in check. However, he still struggled with psychotic episodes, which could be marked by odd behavior, incoherent conversation, seclusion, confusion, and paranoia. These episodes could last for a few days, and made it difficult for Jonathan to hold a job or continue academic studies. As a result of this condition, Jonathan was unable to work.  In approximately 2010 Jonathan was determined to be permanently disabled due to his mental health condition, and started receiving social security disability payments. In 2013, the Los Angeles Superior Court appointed Ms. Salcido Jonathan's Conservator, a position she held continuously until her son's death.

28.     Despite these challenges, Jonathan and his parents were committed to managing

5

his condition. Mr. and Mrs. Salcido remained proactive in managing Jonathan's illness, ensuring his participation in therapy and medication compliance. Jonathan had no criminal record.

29.     At the time of his son's death, Jonathan's father, Mr. Salcido, was a school counselor for the Montebello School District, a position he held for several decades until he retired in the summer of 2017.  Jonathan's mother, Jasmin Salcido, works for the East Whittier City School District as a teacher's assistant for special needs students.

**B.     Whittier Police Department Was on Notice of Jonathan's Mental Illness**

30.     Prior to May 4, 2017, Jonathan was hospitalized on numerous occasions on both a voluntary and involuntary basis for circumstances relating to his mental illness and disability. On at least some of these occasions, doctors put Jonathan under a 5150-involuntary psychiatric hold in a mental health facility pursuant to the California Welfare and Institutions Code.

31.     The Whittier Police Department was well aware of Jonathan's mental health condition, having responded to calls from his parents seeking the Department's assistance in either locating Jonathan when he had gone missing, or in transporting him to a medical facility for mental health treatment. On several occasions when the Salcidos called "911" for assistance, both paramedics and Whittier police officers responded. For example, in November 2010, Whittier police accompanied paramedics transporting Jonathan to a nearby hospital and applied for Jonathan to be placed on a 72-hour 5150-involuntary psychiatric hold. In May 2012, Whittier police transported Jonathan to a hospital emergency room and stationed themselves at his bedside pending his transfer to a psychiatric hospital for mental health treatment. Thus, the Whittier Police Department clearly was or reasonably should have been on notice that Jonathan Salcido suffered from mental illness and that on prior occasions his parents had enlisted the Department's assistance in either locating their son or transporting him son to a mental health facility where he could obtain treatment.

32.     In addition to what Whittier Police Department knew or reasonably should have known prior to May 4, 2017, Department personnel were clearly aware on that date

**FIRST AMENDED COMPLAINT FOR DAMAGES**

1  that Jonathan Salcido was mentally ill, frightened, in need of medical assistance and that

2  they were under a duty to accommodate his condition.

3  **C.**  **Defendants' Killing of Jonathan Salcido**

4      33.    In the days preceding May 4, Jonathan's parents had become worried about their

5  son's increasingly erratic behavior and concluded that he might need to be seen for an

6  adjustment to his medication, so as to stabilize his deteriorating condition. Unable to schedule

7  an appointment with his treating psychiatrist on a prompt basis, Mrs. Salcido scheduled an in-

8  patient hospitalization for Jonathan on May 4, 2017 at Behavioral Health Center (also known

9  as BHC Alhambra Hospital) in Rosemead, California.

10      34.    BHC Alhambra had reserved a bed for Jonathan for May 4 and was preparing to

11  provide him the in-patient mental health treatment which his parents believed he needed.

12  Jonathan reacted well to this information and after showering and dressing, packed to go to the

13  hospital without incident. However, midmorning on May 4 Jonathan's symptoms took a turn

14  for the worse and he began exhibiting increasingly delusional symptoms. After consulting

15  over the telephone with her husband, Mrs. Salcido determined she needed assistance in

16  transporting Jonathan to the hospital and called "911". Upon hearing this, Jonathan became

17  agitated and anxious, expressing fear of the police. Suddenly, Jonathan left the house in his

18  stocking feet and walked away down the street. His mother began following her son, calling

19  out for him to "stop". As she walked, Mrs. Salcido communicated repeatedly with the "911"

20  dispatch operator, informing her of where she and her son were located, and that she needed

21  assistance to take him to BHC Alhambra Hospital which was prepared to admit him for

22  treatment that afternoon. Unable to catch up with Jonathan, Mrs. Salcido flagged down a car

23  being driven by a neighbor who happened to be passing by and they continued following

24  Jonathan.

25      35.    As Mrs. Salcido and her neighbor approached a close-by fenced-in cul de sac,

26  she saw that Whittier police patrol cars were present.  Clearly panicked, Jonathan was

27  attempting unsuccessfully to climb over the fence. Rather than waiting for paramedic

28  personnel to arrive, and rather than calmly attempting to subdue Jonathan, several

Whittier police personnel descended on him in the presence of his mother, violently pried him from the fence and wrestled him to the ground, pinning him face down on the concrete.

36.   As soon as she exited the car, Mrs. Salcido ran to Jonathan who lay face down on the sidewalk, forcibly held down by multiple Whittier police officers, one of whom lay spread eagle on top of Jonathan's back, pinning him to the sidewalk. The responding officers include Tinnin, Azpilicueta, Benjamin, Junge, King, Jensen, Escobedo and Does 8-20. Ms. Salcido called out to her clearly terrified son, trying to assure him and alerting police that Jonathan was unarmed, mentally ill and required his help. Police ignored her. Instead, officers continued to lie on top of the by now handcuffed Jonathan and to apply lethal "control holds" as he lay face down, unarmed and defenseless. Exhibits 2 & 3 are true and correct copies of photographs taken by Mrs. Salcido showing the posture of some of the Whittier police officers using "control holds" on Jonathan.  On information and belief, Defendants Tinnin, Azpilicueta and Benjamin are the Whittier Police Department Officers photographed in Exhibits 2 and/or 3 to this Complaint.

37.   Whittier plain clothed officers who had arrived at the scene approached Mrs. Salcido and pulled her aside. She informed them that she had called "911" for assistance in transporting her son to BHC which was waiting to receive him. She also informed them of her son's mental illness which she believed to be schizoaffective disorder and that doctors had hospitalized Jonathan on numerous prior occasions for his mental health condition. Mrs. Salcido made clear that her son needed help, was no threat and was unarmed. In the middle of this exchange, additional Whittier police suddenly arrived on scene and immediately swarmed to the helpless, handcuffed Jonathan and one after another piled on top of him.

38.   Mrs. Salcido heard her son scream out in terror and turned toward him.  Despite warnings from the two plain-clothed officers to "Let the police do their job", Mrs. Salcido ran toward the mound of at least six police officers now piled on top of her son who was still face down on the pavement and frantically thrashing his legs back and forth. Suddenly, in the presence of his distraught mother, Jonathan stopped moving. The police, including Defendants

8

Tinnin, Azpilicueta, Benjamin, Junge, King, Jensen, and Does 8-20 got off of Jonathan, whose hands were still handcuffed behind his back. This occurred in the presence of Defendant Escobedo who was the highest ranking officer responding to the scene and who was responsible for supervising the remaining Defendants and responding officers. To Mrs. Salcido's horror, one officer stated, "He's not breathing." Another officer kicked Jonathan hard on his ankle, apparently to ascertain whether he was still alive. Yet another officer rolled Jonathan over and CPR was commenced on him.

39.     It was at this juncture that Jonathan's father, Gary Salcido, arrived on the scene. Mr. Salcido rushed to his wife's side and both of them saw their son sprawled on the sidewalk with CPR being administered to him, stopped and attempted again, without result.  Gary and Jasmin Salcido then watched helplessly as paramedics loaded their motionless son on a stretcher and took him away in an ambulance.

40.     Paramedic records indicate that when the paramedics arrived, Whittier police were attempting to administer CPR to Jonathan Salcido on the sidewalk. The paramedics examined Jonathan and found him to be "unresponsive and pulseless." After unsuccessfully attempting CPR, the paramedics transported Jonathan to Presbyterian Intercommunity Hospital, Whittier, where he was pronounced dead.  The attending Emergency Room physician noted "asphyxia" as the cause or a contributing cause of death, along with head trauma and "traumatic" arrest.

41.     According to the Emergency Department Flowsheet and Hospital and Nursing Care Facility Report, Whittier police kept medical staff from fully examining Jonathan.

42.     Further, a Hospital Emergency Department Report notes that: "Family with attorney wish to see patient, however PD instructed RN family no longer able to visit patient and patient to be sent straight to morgue untouched."

43.     Following the transport of Jonathan Salcido to the hospital where he was pronounced, the City of Whittier and the Whittier Police Department as a matter of policy or practice of condoning or ratifying lethal force, caused a baseless search warrant to be

9

**FIRST AMENDED COMPLAINT FOR DAMAGES**

issued and served on the Plaintiffs' home the very day and within hours of Jonathan's death. While the home was searched, Gary and Jasmin Salcido and their two daughters, just returned from the hospital, were ordered to wait on their front lawn while Los Angeles County Sheriffs rifled through their home. On information and belief, this was at the direction of the Whittier Police Department.

**D.     Defendants Have a Practice Of Reliance On Deadly Force**

44.     Tragically, the actions of Defendants Tinnin, Azpilicueta, Benjamin, Junge, King, Jensen, Escobedo and Does 8-20 are consistent with the City of Whittier Police Department's policy and practice of using excessive force and confrontation to intercede with individuals who are mentally disabled, as Jonathan was. Whittier's policies, protocols, procedures, practices, and customs established, utilized and/or ignored in this case, including training and failure to train officers of the Police Department, and caused, contributed to or allowed the constitutional and other violations occurring to Jonathan Salcido, Jasmin Salcido and Gary Salcido. In particular, Whittier has failed to appropriately train and guide its police officers on how to appropriately approach, assess, and interact with mentally ill and disabled persons like Jonathan, to deescalate situations involving the mentally ill and disabled, and to seek immediate mental health care for them. As a result, officers like Defendants Tinnin, Azpilicueta, Benjamin, Junge, King, Jensen, Escobedo and Does 8-20, unnecessarily rely on unjustified, unnecessary, excessive and deadly force.

45.     In killing Jonathan Salcido, the City of Whittier, the Whitter Police Department and its officers subjected this young man, known to them to be suffering from mental illness and in need of assistance, to unnecessary, unjustified excessive force and violated his constitutional rights.

46.     On information and belief, these failures in policy and training are further exacerbated by cavalier personnel decisions that infect the Whittier Police Department, including the selection, hiring, training, retention, supervision, and assignment of officers with demonstrable propensities for excessive force, violence, and misconduct, as well as

10

condoning the conduct of officers like Defendants Tinnin, Azpilicueta, Benjamin, Junge, King, Jensen, Escobedo and Does 8-20, who effectuate such violations with impunity and without any adverse impact on their employment status or benefits. On information and belief, no disciplinary action has been taken against Defendants Tinnin, Azpilicueta, Benjamin, Junge, King, Jensen, Escobedo or Does 8-20 for the unjustified injury to and killing of Jonathan.

47.     For these reasons, Whittier has been responsible for prior incidents of officer-involved killings. These incidents occurred as recently as November 16, 2016, when Whittier Police Department officers fatally shot 37-year-old Jose George Anthony Franco, a man who was likely experiencing a mental health crisis.

**E.      Plaintiffs Have Suffered Serious Injuries As A Result Of Defendants' Actions**

48.     Since Jonathan's death, Plaintiffs Jasmin Salcido, and Gary Salcido have suffered devastating and continuous mental and emotional injuries. Both parents were close to Jonathan, who had lived with them his entire life, and loved him dearly. Jonathan's parents each fully expected to continue living a long and happy life with their son's companionship and support which, despite the challenges his mental illness posed for him, he gave them in many ways. Since Jonathan's death, Mr. and Mrs. Salcido have lived a nightmare of grief and confusion over how this could happen to Jonathan. Particularly painful is the fact that the very persons Mrs. Salcido summoned to her son's aid, were the instruments of his needless death, which occurred right before the eyes of his parents, helplessly standing by.

49.     In addition to their current mental and emotional injuries, Plaintiffs Jasmin and Gary Salcido have and will continue to suffer injuries into the future due to the loss of their son, including the loss of his caring familial relationship with each of them. Both Jasmin and Gary Salcido have missed work and suffered economic damages. Each have sought and continue to seek ongoing medical treatment resulting from the killing of their son.

50.     Plaintiffs have also suffered pre-death pain and suffering as well as

11

**FIRST AMENDED COMPLAINT FOR DAMAGES**

economic injuries as a result of Defendants' actions.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### 42 U.S.C. § 1983 - Excessive Force

**[Plaintiffs Gary Salcido and Jasmin Salcido, as Successors in Interest of Decedent Jonathan Salcido, Against Defendants Whittier, Piper, Tinnin, Azpilicueta, Benjamin, Junge, King, Jensen, Escobedo and Does 8-20]**

51.　Plaintiffs reallege and incorporate by reference each and every allegation contained above as though fully set forth herein.

52.　Plaintiffs Jasmin and Gary Salcido bring this claim for relief in their capacity as the successors in interest of decedent Jonathan Salcido, for whom there is no estate opened pursuant to California Code of Civil Procedure sections 377.30 and 377.32. *See* Attachment 1, Declaration of Gary and Jasmin Salcido Pursuant to C.C.P. § 377.32.

53.　On or about May 4, 2017, after causes of action arose in his favor, Decedent Jonathan Salcido would have been a Plaintiff in this action had he survived the injuries he sustained.

54.　Defendants, acting under color of state law, deprived Jonathan of rights, privileges, and immunities secured by the Constitution and laws of the United States, including those secured by the Fourth Amendment to the Constitution, incorporated and made applicable to the states by the Fourteenth Amendment, by, among other things, unlawfully seizing, dragging, lethally restraining and piling on top of Jonathan, subjecting him to excessive force and to deadly force without sufficient justification.

55.　The foregoing wrongful acts and failures to act of Defendants killed Jonathan. As a proximate result of the foregoing wrongful acts of Defendants, and each of them, Jonathan sustained general damages, including pre-death pain and suffering, the loss of the enjoyment of life and other hedonic damages, in an amount in accordance with proof.

56.　By engaging in the foregoing wrongful acts and failures to act, Defendants

12

acted with conscious disregard of Jonathan's rights, in responding with unjustified lethal force to Mrs. Salcido's "911" call that her unarmed son needed medical assistance. Said Defendants escalated a peaceful encounter in the violent, confrontational way in which they approached Jonathan, and ultimately resorted to lethal force without justification. Defendant Piper willfully failed to provide or enforce the training necessary to prevent violent encounters with individuals with mental disabilities, including Jonathan Salcido. This lack of training and/or failure to enforce any such training led to Jonathan's senseless injuries and killing at the hands of Defendants Tinnin, Azpilicueta, Benjamin, Junge, King, Jensen, Escobedo and Does 8-20 who provided Jonathan no opportunity to comprehend the situation, the time or means to comply with the officers' requests, and no warning that they would use lethal force or control holds should he fail to comply. Defendants' conduct was willful, wanton, malicious, and oppressive, thereby justifying an award to Plaintiffs of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

## SECOND CLAIM FOR RELIEF

### 42 U.S.C. § 1983 - Deprivation of the Rights of Plaintiffs to Familial Relationships with Their Son, Jonathan Salcido

### [Plaintiffs Gary Salcido and Jasmin Salcido Against Defendants Piper, Tinnin, Azpilicueta, Benjamin, Junge, King, Jensen, Escobedo and Does 8-20]

57.     Plaintiffs reallege and incorporate by reference each and every allegation contained above as though fully set forth herein.

58.     Defendants, acting under color of state law, deprived Plaintiffs of their right to a familial relationship with decedent Jonathan Salcido without due process of law in violation of the Fourteenth Amendment by their use of unreasonable, unjustified force and violence, without provocation, which shocks the conscience and demonstrates an intent to harm, causing injuries which resulted in Jonathan's death.

59.     As a proximate result of the foregoing wrongful acts and failures to act of Defendants, and each of them, Plaintiffs sustained general damages, including grief,

**FIRST AMENDED COMPLAINT FOR DAMAGES**

emotional distress, and pain and suffering and loss of comfort and society, and special damages, including loss of support, in an amount in accordance with proof.

60.     In doing the foregoing wrongful acts and failures to act, Defendants Tinnin, Azpilicueta, Benjamin, Junge, King, Jensen, Escobedo and Does 8-20 acted with conscious disregard of Jonathan's rights, in responding with unjustified lethal force to Mrs. Salcido's "911" call that her unarmed son needed medical assistance. Said Defendants escalated a peaceful encounter in the violent, confrontational way in which they approached Jonathan, and ultimately resorted to lethal force without justification. Defendant Piper willfully failed to provide or enforce the training necessary to prevent violent encounters with individuals with mental disabilities, including Jonathan Salcido. This lack of training and/or failure to enforce any such training led to Jonathan's senseless injuries and killing at the hands of Defendants Tinnin, Azpilicueta, Benjamin, Junge, King, Jensen, Escobedo and Does 8-20 who provided Jonathan no opportunity to comprehend the situation, the time or means to comply with the officers' requests, and no warning that they would use lethal force or control holds should he fail to comply. Defendants' conduct was willful, wanton, malicious, and oppressive, thereby justifying an award to Plaintiffs of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

## **THIRD CLAIM FOR RELIEF**

### **42 U.S.C. § 1983 - *Monell* Liability**

### **[All Plaintiffs Against Defendants City of Whittier and Chief Piper]**

61.     Plaintiffs reallege and incorporate by reference each and every allegation contained above as though fully set forth herein.

62.     Plaintiffs are informed and believe, and thereon allege that, at all times herein mentioned Defendants City of Whittier and Chief Piper acted with deliberate indifference, and conscious and reckless disregard to the safety, security, and constitutional and statutory rights of Jonathan Salcido and Plaintiffs, including the right to be free from unreasonable seizures and excessive force under the Fourth and

14

Fourteenth Amendments, the right to procedural and substantive due process, and the right not to be discriminated against. Defendants also maintained, enforced, tolerated, ratified, permitted, acquiesced in, and/or applied, among others, the policies, practices, procedures and customs described above. At all times relevant herein, Chief Piper had final policy-making authority and promulgated and maintained constitutionally deficient policies, practices, procedures and customs. At all times relevant herein, Chief Piper had final policy-making authority and promulgated and maintained constitutionally deficient policies, procedures, practices, customs and training regarding interacting with persons with mental health disabilities, or failed to enforce any constitutionally sufficient policies, procedures, practices, customs and training.

63.     As a direct and proximate result of the foregoing, Defendants senselessly killed Jonathan Salcido, thereby causing him and Plaintiffs the injuries and damages complained of herein and subject to proof at trial.

## FOURTH CLAIM FOR RELIEF

**Violation of Title II of the Americans with Disabilities Act (42 U.S.C. § 12131) [Plaintiffs Gary Salcido and Jasmin Salcido, as Successors in Interest of Decedent Jonathan Salcido, Against Defendant City of Whittier]**

64.     Plaintiffs reallege and incorporate by reference each and every allegation contained above as though fully set forth herein.

65.     Congress enacted the Americans With Disabilities Act ("ADA") upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms for discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. §12101(a)(2).

66.     In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1)-(2).

**FIRST AMENDED COMPLAINT FOR DAMAGES**

67.     Title II of the ADA provides in pertinent part: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

68.     The U.S. Department of Justice implemented Title II, 28 C.F.R. § 35.160, regulations which require public entities to take appropriate steps to ensure that communications with members of the public with disabilities are as effective as communications with others.

69.     At all times relevant to this action, Defendant City of Whittier was a public entity within the meaning of Title II of the ADA and provided programs, services, and activities to the general public.

70.     The U.S. Department of Justice, Civil Rights Division, Disability Rights section has published, "Commonly Asked Questions About the Americans with Disabilities Act and Law Enforcement," a document in which the U.S. Department of Justice provides guidelines in the interpretation of Title II of the ADA (the Guidelines). In the Guidelines, the Department of Justice notes that the ADA affects virtually everything that police officers and deputies do, including providing emergency medical services, arresting, booking, and holding suspects, and other duties.

71.     At all times relevant to this action, Jonathan Salcido was a qualified individual in that he was a citizen of the State of California and resident in the City of Whittier and thereby entitled and qualified to receive and participate in the programs, services, and activities provided by Defendant City of Whittier.

72.     Jonathan was a person with a disability within the meaning of Title II of the ADA in that he suffered from mental illness, variously characterized by treating mental health doctors as paranoid schizophrenia, bipolar disorder, and schizoaffective disorder which resulted in substantial limitations in his mental and emotional processes such as processing orders, comprehension and interacting with others.

73.     Through its acts and omissions described herein, Defendant City of Whittier

16

**FIRST AMENDED COMPLAINT FOR DAMAGES**

violated Title II of the ADA by excluding Jonathan Salcido from participation in, denying him the benefits of, and subjecting him to discrimination in the benefits and services Whittier provides to the general public.

74.     Through the acts and omissions of Defendant City of Whittier and its agents and employees described herein, Defendant City of Whittier subjected Jonathan Salcido to discrimination on the basis of his disability in violation of Title II of the ADA by failing to provide communication that is as effective as communication provided to the general public, by failing to provide emergency medical services that are as effective and provide the same benefits as emergency medical services provided to the general public, and by failing to provide security for Jonathan's person that provided the same benefits as that provided to the general public.

75.     Through the acts and omissions of Defendant City of Whittier and its agents and employees described herein, Defendant City of Whittier denied to Jonathan Salcido the opportunity to receive the benefits of or to participate in the programs, services, and activities they provide, including the service or activity of communication, the service, program or activity of receiving the provision of emergency medical services, and the service of providing security for Jonathan's person, particularly with regard to providing control, restraint, communication, use of force, and custodial services.

76.     Through the acts and omissions of Defendant City of Whittier and its agents and employees described herein, Defendant City of Whittier subjected Jonathan Salcido to discrimination on the basis of his disability in violation of Title II of the ADA by failing to provide medical treatment, including the provision of personnel who were appropriately trained in medical, psychiatric, and/or psychological treatment and appropriately trained medical, psychiatric, and psychological treatment and appropriately trained medical, psychiatric, and psychological personnel are provided and made available for the general public.

77.     Plaintiffs are informed, believe, and thereon allege that Defendant City of Whittier and its agents and employees have failed and continue to fail to take into

17

**FIRST AMENDED COMPLAINT FOR DAMAGES**

account and provide reasonable accommodations for persons with mental disabilities by failing to:

      a.   Adopt and enforce policies and procedures for communicating effectively, controlling, and interacting with persons with mental health disabilities;

      b.   Adopt and enforce policies and procedures for providing persons with mental health disabilities access to medical facilities, including the provision of employees with medical training and medical resources to communicate, interact with, and control such persons;

      c.   Train and supervise City of Whittier and WPD officers and employees to communicate effectively, control, and interact with persons with mental disabilities;

      d.   Train and supervise City of Whittier and WPD officers and employees regarding the cognition and behavior of persons with mental health disabilities; and

      e.   Train and supervise City of Whittier and WPD officers and employees that they should not use force, or put themselves in positions where the use of force may become necessary without first notifying and obtaining the assistance of persons who have the requisite training and experience in communicating effectively with and controlling and interacting with persons with mental disabilities.

    78.    As a direct and proximate result of the aforementioned acts, including but not limited to Defendants deliberate indifference to the violation of Jonathan Salcido's federally protected rights, Jonathan Salcido suffered, and Plaintiffs suffered and continue to suffer humiliation, hardship, anxiety, and indignity, and severe mental and emotional anguish, and Jonathan was killed.

    79.    Pursuant to 42 U.S.C. § 12133, Plaintiffs are entitled to recover the compensatory damages described herein, and reasonable attorneys' fees and costs

18

**FIRST AMENDED COMPLAINT FOR DAMAGES**

incurred in bringing this action.

**FIFTH CLAIM FOR RELIEF**

**Violation of Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794)**

**[Plaintiffs Jasmin and Gary Salcido, as Successors in Interest of Decedent**

**Jonathan Salcido, Against Defendant City of Whittier]**

80.     Plaintiffs reallege and incorporate by reference each and every allegation contained above as though fully set forth herein.

81.     Section 504 of the Rehabilitation Act of 1973 provides in pertinent part: "[N]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits, or be subjected to discrimination under any program or activity receiving federal financial assistance . . . ." 29 U.S.C. § 794.

82.     Decedent Jonathan Salcido, at all times relevant herein, was a qualified individual with a disability within the meaning of the Rehabilitation Act because he suffered from mental illness, variously characterized by treating mental health doctors as paranoid schizophrenia, bipolar disorder and schizoaffective disorder—all mental impairments that substantially limited one or more of his major life activities. *See* 29 U.S.C. § 705(20)(B).

83.     At all times relevant to this action, Defendant City of Whittier was a recipient of federal funding within the meaning of the Rehabilitation Act.

84.     Through their acts and omissions described herein, Defendant City of Whittier has violated the Rehabilitation Act, including all applicable implementing regulations, by excluding Jonathan Salcido from participation in, denying him the benefits of, and subjecting him to discrimination in the benefits and services they provide to the general public.

85.     As a direct and proximate result of the aforementioned acts, including but not limited to Defendant's deliberate indifference to the violation of Jonathan Salcido's federally protected rights, decedent Jonathan suffered great pain, suffering and death, and

19

**FIRST AMENDED COMPLAINT FOR DAMAGES**

Plaintiffs have suffered and continue to suffer humiliation, hardship, anxiety, indignity, and severe mental and emotional anguish.

86.     Pursuant to 29 U.S.C. § 794(a), Plaintiffs are entitled to recover the damages described in this Complaint and reasonable attorneys' fees and costs incurred in bringing this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

1.     For compensatory, general, and special damages against each Defendant, jointly and severally, amounts to be proven at trial;

2.     Punitive and exemplary damages against individually named Defendants Piper, Tinnin, Azpilicueta, Benjamin, Junge, King, Jensen, Escobedo and Does 8-20, in an amount appropriate to punish Defendant(s) and deter others from engaging in similar misconduct;

3.     Prejudgment interest;

4.     For costs of suit and reasonable attorneys' fees and costs as authorized by statute or law;

5.     For restitution as the Court deems just and proper;

6.     For such other relief, including injunctive and/or declaratory relief, as the Court may deem proper.

/ / /

/ / /

/ / /

20

**FIRST AMENDED COMPLAINT FOR DAMAGES**

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand trial by jury in this action.

Dated: April 5, 2018                          Respectfully Submitted,


                                              HADSELL STORMER & RENICK LLP



                                              By:   /s/ - Cindy Pánuco
                                                    Barbara Enloe Hadsell
                                                    Dan Stormer
                                                    Cindy Pánuco
                                              Attorneys for Plaintiffs

21