1 | Barbara Enloe Hadsell, Esq. [S.B. #086021]
2 | Dan Stormer, Esq. [S.B. #101967]
  | Cindy Pánuco, Esq. [S.B. #266921]
3 | Joshua J. Nuni, Esq. [S.B. #313724]
  | HADSELL STORMER & RENICK LLP
4 | 128 N. Fair Oaks Avenue
  | Pasadena, California 91103
5 | Telephone: (626) 585-9600
  | Facsimile: (626) 577-7079

6 | Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASMIN SALCIDO, and GARY SALCIDO, individually and as surviving heirs and successors in interest of JONATHAN SALCIDO (deceased),<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF WHITTIER, CHIEF OF POLICE JEFF A. PIPER (in his individual and official capacity), LAMARR TINNIN (in his individual and official capacity), JIM AZPILICUETA (in his individual and official capacity), ROY BENJAMIN (in his individual and official capacity); JAKE JUNGE (in his individual and official capacity), JOHN KING (in his individual and official capacity), RICHARD JENSEN (in his individual and official capacity), JOSE ESCOBEDO (in his individual and official capacity) and DOES 8-20, inclusive,<br><br>Defendants. | Case No: 2:17-cv-08819 CBM (ASx)<br><br>[Assigned to the Honorable Consuelo B. Marshall – Courtroom 8B]<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION *IN LIMINE* NO. 4 TO EXCLUDE EVIDENCE AND ARGUMENT REGARDING SHERIFF'S INVESTIGATION AND/OR WHITTIER POLICE DEPARTMENT ADMINISTRATIVE INVESTIGATION FINDINGS**<br><br>*[Filed concurrently with MIL Nos. 1-3, 5-12; Prop. Order, Decl. of Joshua Nuni & Exhibits]*<br><br>DATE:   April 2, 2019<br>TIME:   10:00 a.m.<br>CRTRM:  8B<br><br>Complaint Filed:   December 7, 2017<br>Discovery Cut-Off:  January 1, 2019<br>Motion Cut-Off:    March 12, 2019<br>Trial:             July 16, 2019 |

**PLTFS' NTC. OF MTN. & MIL NO. 4 TO EXCLUDE EVID & ARGUMENT RE SHERIFF'S INVESTIGATION AND/OR WPD ADMINISTRATIVE INVESTIGATION**

**TO THE COURT AND TO ALL PARTIES AND THEIR ATTORNEY(S) OF RECORD:**

PLEASE TAKE NOTICE that on April 2, 2019, at 10:00 a.m. in Courtroom 8B of the above-entitled Court, or as soon thereafter as the matter may be heard, Plaintiffs Jasmin Salcido, and Gary Salcido, individually and as surviving heirs and successors in interest of Jonathan Salcido (deceased), through their counsel of record, will and hereby do move for an Order to exclude any argument or evidence regarding the Los Angeles County Sheriff's and/or District Attorney's findings following the criminal investigation of the killing of Jonathan Salcido on May 4, 2017 as well as the Whittier Police Department's findings in their administrative investigation.

This motion follows a conference of counsel pursuant to Local Rule 7-3 and is based on the Federal Rules of Civil Procedure, the instant Notice of Motion, the attached Memorandum of Points and Authorities, the declaration of Plaintiffs' counsel, the pleadings on file herein, and on whatever other additional evidence is adduced at the hearing on the motion.

Dated: March 5, 2019                    Respectfully Submitted,

                                        HADSELL STORMER & RENICK LLP


                                        By: /s/ - Joshua J. Nuni
                                            Barbara Enloe Hadsell
                                            Dan Stormer
                                            Cindy Pánuco
                                            Joshua J. Nuni
                                        Attorneys for Plaintiffs

## INTRODUCTION

Plaintiffs seek an order from this Court precluding any evidence or argument regarding the Los Angeles County Sheriff's and/or District Attorney's findings following the investigation of the killing of Jonathan Salcido ("Jonathan") on May 4, 2017. They also seek to exclude the Whittier Police Department ("WPD")'s Investigation and findings into the same. The central issue in this case is whether Defendants' use of force on Jonathan on May 4, 2017 was a significant factor in causing his death and was objectively reasonable "based upon the information the officers had when the conduct occurred." *See Graham v. Connor*, 490 U.S. 386, 397 (1989); *Saucier v. Katz*, 533 U.S. 194, 207 (2001). That is a question that must be left to the trier of fact. As a result, any findings of fact or conclusions related to whether the use of force against Jonathan was justified or within policy, by the Los Angeles County Sheriff's Department, District Attorney's Office, or the Whittier Police Department, would improperly invade the province of the jury. Similarly, the fact of these investigations, as well as their findings and conclusions must be excluded because they invade the province of the jury, are irrelevant and prejudicial, and are based on inadmissible hearsay.

## STATEMENT OF FACTS

Just a few days following his 18th birthday, Jonathan Salcido was diagnosed with mental illness, which mental health professionals over the years characterized variously as schizophrenia, bipolarism and schizoaffective disorder. On the date of his death, May 4, 2017, Jonathan was 27 years old, having lived at home with his parents, plaintiffs Gary and Jasmin Salcido, his entire life.

In the days leading up to May 4, and after several years of relative mental health stability, Jonathan began exhibiting symptoms of delusional thinking. Fearing her son was heading for a psychotic break, Ms. Salcido arranged for Jonathan to be admitted to a nearby hospital on May 4 for mental health stabilization. When Jonathan refused to go to the hospital with her that morning, and after consulting with her husband, Ms. Salcido called 911 asking for assistance to transport Jonathan to the hospital. Jonathan suddenly

1

**PLTFS' NTC. OF MTN. & MIL NO. 4 TO EXCLUDE EVID & ARGUMENT RE SHERIFF'S INVESTIGATION AND/OR WPD ADMINISTRATIVE INVESTIGATION**

exited the house and began proceeding up neighboring streets as his mother followed him, eventually making his way to a fenced in cul de sac. There, he was confronted by WPD officers whom the 911 dispatcher had dispatched to the scene.

After forcing Jonathan into a chest down, face down, prone position on the ground, the original three responding officers, defendants Tinnin, Benjamin and Azpilicueta, attempted for approximately 10 minutes to handcuff Jonathan, whom they knew to be mentally ill and in need of treatment. Defendants Tinnin and Benjamin positioned themselves on Jonathan's shoulders, restraining various parts of his upper body with their knees and hands. Meanwhile, defendant Azpilicueta mounted Jonathan's back and lay, full body, on top of him, using his weight and force of gravity to restrain Jonathan's upper torso, stomach and legs. After approximately 10 minutes, these defendants succeeded in handcuffing Jonathan. They did not turn him over or onto his side or back, however, which would have assisted his breathing. When, after approximately a minute, Jonathan attempted to roll himself over, Tinnin, Benjamin and Azpilicueta went down on him again, using their hands, knees and bodies to keep him in a prone position. Within a few minutes, a swarm of additional WPD officers arrived on scene. Defendants King, Junge and Jensen rushed over and grabbed various other parts of Jonathan's body to hold him chest down to the ground. Defendant Sergeant Escobedo, who also arrived on scene, did nothing to ensure that Jonathan was able to breathe in this proned position.

Upon arrival, LA County Firefighters/paramedics immediately told the WPD officers and detectives to unhandcuff Jonathan and turn him over, as he appeared blue and pulseless. CPR was commenced; however, medical personnel were unable to obtain a pulse and eventually transported Jonathan to the hospital, where he was pronounced dead. This entire sequence of events was witnessed by Jonathan's mother, Plaintiff Jasmin Salcido and toward the end, by his father, Gary Salcido. Plaintiffs contend that Jonathan Salcido died of cardiac arrest due to being deprived of oxygen as a result of the unlawful and out of policy procedures engaged in by defendants who had been summoned to help this unquestionably mentally ill, unarmed and terrified young man.

2

PLTFS' NTC. OF MTN. & MIL NO. 4 TO EXCLUDE EVID & ARGUMENT RE SHERIFF'S INVESTIGATION AND/OR WPD ADMINISTRATIVE INVESTIGATION

Despite compelling evidence that the use of force against an unarmed mentally disabled young man was excessive, and not justified, both the criminal investigation of the Los Angeles County District Attorney's Office, and the administrative investigation by the Whittier Police Department concluded otherwise. The Los Angeles County Sheriff's Department ("LASD") conducted a "criminal" investigation of the officers who killed Jonathan. On March 8, 2019 the City of Whittier produced the LASD's investigative files which spanned 1,022 pages.[1] The file contained, *inter alia,* crime scene logs, police officer reports, witness statements, and Jonathan's medical records. On May 1, 2018, after the LASD completed its investigation, the "Justice System Integrity Division" of the Los Angeles County District Attorney's ("LADA") Office issued a "Memorandum" to Whittier Police Chief Jeff A. Piper. The Memorandum explained the legal standards for proving the crimes of involuntary manslaughter, assault under color of authority, and criminal negligence. The LADA's Office Memorandum concluded as follows:

> The Justice System Integrity Division of the Los Angeles County District Attorney's Office has completed its review of the May 4, 2017 death of Jonathan Salcido while in the custody of Whittier Police Department (WPD) Officers Lamar Tinnin, Roy Benjamin, Richard Jensen, and Jim Azpilicueta, and Detectives Jake Junge and John King. It is our conclusion the officers used reasonable force when they attempted to control Salcido before he died due to sequelae of excited delirium, and are not criminally responsible for his death.

(Ex. 20, at 1.)

Separately, and only *after* the LADA's criminal investigation was completed, the WPD initiated its own "administrative investigation" to assess whether the conduct of any of the officers and detectives violated WPD policies. To do this, the WPD retained a private firm, "Norman A. Traub Associates". Chuck Thomas, a private investigator *not* affiliated with the Whittier Police Department carried out the investigation. (Ex. 12, at 6.)

---

[1] The entirety of that investigation file is not filed herewith because of its volume.

3

**PLTFS' NTC. OF MTN. & MIL NO. 4 TO EXCLUDE EVID & ARGUMENT RE SHERIFF'S INVESTIGATION AND/OR WPD ADMINISTRATIVE INVESTIGATION**

Mr. Thomas's "investigation" consisted solely of reviewing and then summarizing the LASD criminal investigation. Thomas did not independently interview any of the involved WPD personnel, Mr. and Ms. Salcido, or any other witness. Nor did he review any documents other than those forming part of the LASD investigation. He completed this "investigation" and issued findings on September 13, 2018. (*Id.*) Despite his failure to engage in any independent fact-finding whatsoever, Mr. Thomas concluded that:

> I believe the evidence supports that the involved Officers' actions were consistent with the WPD's Use of Force Policy (Section 300), which reads in part, "Officers shall use only that amount of force that reasonably appears necessary given the facts and circumstances perceived by the officer at the time of the event to accomplish a legitimate law enforcement purpose….I believe the included LASD investigation was sufficient and no further follow-up investigation was necessary for this administrative investigation.

(Ex. 12, at 62.)

For the reasons set forth hereafter, the existence of these investigations as well as their findings, conclusions, and the hearsay contained within these two investigations, must be excluded.

## ARGUMENT

### I. Evidence or Argument Regarding the LADA, LASD and WPD's Criminal and Administrative Investigations, Findings and Conclusions Are Irrelevant

Under Federal Rule of Evidence 401, evidence is only relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence," and the fact is "of consequence in determining the action." Fed. R. Evid. 401(a), (b). Here, the relevant legal issue is whether defendants' use of force against Jonathan was "'objectively reasonable' in light of the facts and circumstances confronting them." *See Graham v. Connor*, 490 U.S. 386, 397 (1989). The reasonableness analysis is left to "courts and juries [who] must determine the propriety of the officer's actions based upon a thorough review of the knowledge, facts and circumstances known to the officer at the

time he exercised his split-second judgment." *Sanchez v. Jiles*, No. CV 10-09384 MMM (OPx), 2012 U.S. Dist. LEXIS 200372, at *7 (C.D. Cal. June 14, 2012). Courts preclude law enforcement agencies from doing what WPD intends to do here: put on evidence that self-serving investigations concluded that Jonathan's killing was justified and/or within policy. *Morris v. Long*, No. 1:08-cv-01422-AWI-MJS, 2012 U.S. Dist. LEXIS 59413, at *12-13 (E.D. Cal. Apr. 27, 2012) (excluding "the result of the Fresno Police Department's internal affairs investigation into the underlying accident as evidence of the 'correctness' of [Defendant's] actions").

The LADA's conclusion that the actions of the involved officers and defendants were "reasonable" Ex. 20 at 1, and the WPD's private investigator's opinion that the actions of these WPD personnel were "consistent with the WPD's Use of Force Policy" are irrelevant for a number of reasons. First, the LADA's investigation was limited to evaluating whether the actions of the officers and detectives would support *criminal charges*. Specifically, the LADA's Memorandum analyzed the facts as reported by the LASD investigators, to determine whether these facts supported the elements required to prove that the officers could be found guilty of "involuntary manslaughter," "assault under color of authority," or "criminal negligence." (Ex. 20, at 5.) In light of the elements of these crimes and the criminal burden of proof, the LADA concluded that the "officers are not criminally liable for [Jonathan's] death." This conclusion has no bearing on the *civil* liability of the defendants.

Similarly, the limited scope of the investigation by the WPD's private investigator was to "ascertain the facts in regard to Jonathan Salcido's death on May 4, 2017 while in the custody of the Whittier Police Department Officers and to determine if the Officers' conduct was consistent with Whittier Police Department Policy." (Ex. 12, at 6.) The private investigator's own personal opinions, based on no independent investigation whatsoever, are irrelevant.

In *Burke v. City of Santa Monica*, No. CV 09-02259 MMM (PLAx), 2011 U.S. Dist. LEXIS 165475, at *52-54 (C.D. Cal. Jan. 10, 2011), a court in this district excluded

1   the findings and conclusions of an internal affairs investigation of a use of force incident.
2   In *Burke,* the parties were limited to offering evidence of "the fact that interviews were
3   conducted, and to the extent otherwise permissible under the rules of evidence, to the
4   statements made during the interviews," in the course of the investigation. *Id.* Here too,
5   only the fact that interviews were conducted, and the statements made to investigators,
6   may be admissible to the extent they are not made inadmissible by the rules of evidence.

## II. The LADA and WPD's Investigations Are Substantially More Prejudicial Than Probative

Even assuming arguendo that evidence of the LADA and WPD's findings or conclusions are somehow relevant to a claim or defense in this case, any such minimal probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, and wasting of time. *See* Fed. R. Evid. 403. "Unfair prejudice" within this context refers to "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Id.*, Advisory Committee Notes; *see also United States v. W.R. Grace*, 504 F.3d 745, 759 n.6 (9th Cir. 2007).

"In light of the danger of unfair prejudice, the Ninth Circuit has cautioned that 'evidence of other crimes or wrong acts is not looked upon with favor and must be carefully scrutinized to determine probative value.'" *Valtierra*, 99 F. Supp. 3d at 1194 (quoting *United States v. Aims Back*, 588 F.2d 1283, 1287 (9th Cir. 1979)). There can be little doubt that reference to defendant officers and detectives being cleared of any criminal wrongdoing or that they conformed to WPD use of force policies, is likely to unfairly prejudice plaintiffs' case and inflame the emotions of a jury. The jury may give undue weight to these findings, which apply different standards than those the jurors will be instructed to utilize in evaluating the evidence presented at trial. As such, evidence of these investigations and the conclusions made also raises the danger of confusing and misleading the jury by focusing their attention away from making their own inquiry into the reasonableness of the defendants' use of force from the perspective of a reasonable

6

**PLTFS' NTC. OF MTN. & MIL NO. 4 TO EXCLUDE EVID & ARGUMENT RE SHERIFF'S INVESTIGATION AND/OR WPD ADMINISTRATIVE INVESTIGATION**

officer. Accordingly, the fact that criminal and administrative investigations were conducted and cleared the involved officers and detectives of any criminal or civil misconduct must be excluded from trial.

### III. Documents Underlying the Conclusions in the LADA and WPD's Investigations Constitute Inadmissible Hearsay

Out of court statements offered to prove the truth of the matter asserted constitute inadmissible hearsay. Fed. R. Evid. 801(c); 802. Internal affairs reports are out-of-court statements that cannot be offered for the truth of the matters asserted therein. *Randle v. Tregre*, 147 F. Supp. 3d 581, 596 (E.D. La. 2015). Additionally, police reports, and statements given to police officers are also hearsay without exception. *See, e.g.*, *Torres v. City of Santa Clara*, No. 5:13-CV-01475-PSG, 2014 U.S. Dist. LEXIS 116195, 2014 WL 4145509, at *3 (N.D. Cal. Aug. 20, 2014) (finding that statements given in response to police questioning approximately an hour after an event did not qualify as an excited utterance).

Here the LADA's conclusion that the defendants did not engage in criminal conduct, and the WPD's finding that they acted in conformance with the WPD policy, constitute impermissible hearsay. Defendants cannot offer the findings from either of these reports for the truth of the matter asserted. Further the LADA's Memorandum contains a summary of facts which constitutes double hearsay as the factual findings derive from inadmissible witness statements, police officer reports, lab reports, autopsy records, and medical files in the LASD's investigative materials. *See* Ex. 12 at 1-3. Likewise, the WPD's administrative report makes six pages of factual findings and conclusions, Ex. 12 at 57-62, all of which simply parrot the LASD Investigation. Ex. 12 at 7-56. Moreover, the WPD's investigation concedes that the investigator's conclusions are based solely on his "review[] of the LASD criminal investigation, which included recorded interviews of the involved Officers and the pertinent witness interviews to the incident," and that "[n]o additional interviews were necessary to complete [the] administrative investigation." (Ex. 12, at 6.)

## CONCLUSION

For all of the foregoing reasons, this Court should issue an Order excluding any argument or evidence regarding the fact of and conclusions drawn by the LASD and LADA's criminal investigation, and the WPD's administrative investigation. The Court should order that only the fact that interviews were conducted, and that statements made to investigators, are admissible to the extent they are not made inadmissible by the rules of evidence.

Dated: March 5, 2019

Respectfully Submitted,

HADSELL STORMER & RENICK LLP

By: /s/ - Joshua J. Nuni
Barbara Enloe Hadsell
Dan Stormer
Cindy Pánuco
Joshua J. Nuni
Attorneys for Plaintiffs

8

**PLTFS' NTC. OF MTN. & MIL NO. 4 TO EXCLUDE EVID & ARGUMENT RE SHERIFF'S INVESTIGATION AND/OR WPD ADMINISTRATIVE INVESTIGATION**